IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ANTHONY TODD MILLER,

                Petitioner,                OPINION AND ORDER

v.

                                                      14-cv-887-wmc

JON E. LITSCHER,[1]

                Respondent.

---

In 2009, petitioner Anthony Todd Miller pleaded guilty to two counts of possession of child pornography in St. Croix County Case No. 08CF418. He was sentenced to five years of initial confinement followed by a ten-year term of extended supervision. Miller then filed and lost a direct appeal, as well as a subsequent motion for post-conviction relief under Wis. Stat. § 974.06. He now seeks a writ of habeas corpus under 28 U.S.C. § 2254, arguing that his guilty plea should be withdrawn for a variety of reasons. After the state filed an answer, along with records from the relevant state court proceedings, both parties submitted briefing, making the petition ripe for decision. For the reasons set forth below, the court concludes that Miller's petition is barred by the doctrine of procedural default. Accordingly, his petition will be denied.

FACTS[2]

In St. Croix County Case No. 08CF418, Miller was charged with two counts of possessing child pornography. The "probable cause" section of the original criminal

---

[1] The court has substituted the current Secretary of the Department of Corrections, Jon E. Litscher, as the respondent in this matter. Fed. R. Civ. P. 25(d).

[2] The following facts are taken from the petition and the state court records provided by petitioner and the state.

1

complaint stated that Miller's residence was identified during an investigation of child pornography by the United States Immigration and Customs Enforcement ("ICE"). In particular, computer analysis showed that someone at Miller's residence had traded images of child pornography with the subject of the ICE investigation. After the investigation of Miller's residence was referred to state authorities, a special agent was able to review chat logs and images of contacts between Miller's residence and the ICE subject, including 448 pictures. According to the criminal complaint, the pictures "consisted of depictions of naked pre-pubescent females whose genitalia were prominently displaced and the focal point of the pictures." Additionally, "[m]any of the images depicted were of naked pre-pubescent females performing oral sex on naked males." (*See* Crim. Cpt., dkt. #14-9, at 9.)

The criminal complaint further states that special agents obtained a search warrant for Miller's residence and, during the execution of the search warrant, Miller "admitted that he had engaged in downloading and trading images of child pornography for approximately the past two years." (*Id.* at 10.) Miller also admitted to searching "the internet for child pornography using selected specific search terms such as 'pre-teen and pre-teen hardcore,'" and he estimated the age of the females depicted as "typically between 9 and 15 years of age." Finally, the criminal complaint noted that Miller confirmed that the images of child pornography and the chat logs obtained by ICE agents during their investigation were consistent with his own recollection of communications he had with images he had displayed on his computer. (*Id.*)

After he was arrested and charged, Miller filed a motion to suppress statements he made to the special agents during the execution of the search warrant. Before the court ruled on that motion, however, Miller entered a guilty plea to both counts.

A plea hearing was held on June 18, 2009. The court first noted that the state had filed an amended information that morning, asking Miller whether he'd had the opportunity to review and sign the plea questionnaire and waiver of rights with his attorney. (*See* Trans. Plea Hrg., dkt. #12.) Miller responded in the affirmative.[3] Miller also acknowledged receiving a copy of the amended information and his understanding that it contained two counts for possession of child pornography. He next acknowledged his understanding that both felonies carried a 3-year minimum sentence, unless the judge made a finding that the public interest would be best served with a lesser sentence, and a maximum penalty of a $100,000 fine and 25 years' imprisonment. Miller finally confirmed that he understood his right to a trial by jury, at which each element of the offenses would have to be proved beyond a reasonable doubt.

Miller then pleaded guilty to both counts. (*Id.* at 16.) Miller went on to confirm that his pleas were voluntary; he understood he was giving up all of the rights set forth in the plea questionnaire; he knew the judge would likely order a presentence investigation

---

3 While neither Miller nor the state included a copy of the actual plea questionnaire in the record, briefing by the parties to the Court of Appeals indicates that the plea questionnaire stated: "These elements have been explained to me by my attorney or are as follows: having reached the age of 18, did knowingly possess photographs of child engaging in sexually explicit conduct and knew the child was under 18." The plea questionnaire further stated that, "I understand that if the judge accepts my plea, the judge will find me guilty of the crime(s) to which I am pleading based upon the facts in the criminal complaint and/or the preliminary examination and/or as stated in court." (*See* dkt. #14-2, Petitioner's Appeal Br. at 4 (describing plea questionnaire); dkt. #14-9 at 15 (circuit court decision describing plea questionnaire).)

before sentencing; and he understood the various sentencing options available to the judge. (*Id.* at 18-20.) Accordingly, the court accepted Miller's plea and found that the "report attached to the original complaint" contained "sufficient facts to find [him] guilty." (*Id.* at 21.) At the same time, the court did not ask Miller whether he understood the elements of the charged offenses; whether he could explain them in his own words; or whether he had read or agreed with the facts in the criminal complaint. The court also did not ask the state to explain what it would have proven had the case gone to trial, and it did not ask Miller to explain, in his own words, his conduct that formed the basis of the offenses.

On August 17, 2009, the circuit court sentenced Miller to serve a 15-year sentence, including 5 years of initial confinement followed by a 10-year term of extended supervision. On February 18, 2011, Miller filed a post-conviction motion through counsel, which sought a hearing and an order permitting withdrawal of his guilty pleas. The motion argued that the plea colloquy was defective because Miller was not told all of the elements of the offense of child pornography. More specifically, Miller claimed that at the time he pleaded guilty, he believed Wisconsin law prohibited *any* nude photos of minors, and he did not understand the legal definition of "sexually explicit conduct." If he had known the legal definition of "sexually explicit conduct" required for the offense of possession of child pornography, Miller further claimed that would not have pleaded guilty because the state would have found nothing on his computers that included "sexually explicit conduct." Miller also argued that his counsel was ineffective because she failed to explain that his guilty plea would waive his right to contest the admissibility

4

of his statements. Alternatively, the motion sought resentencing on the grounds that the court relied on inaccurate information at sentencing.

After a hearing, the circuit court issued a decision concluding that, although Miller had shown a defect in the plea colloquy, the state had shown that the plea was still knowing, intelligent and voluntary. The court also concluded that Miller's counsel was not ineffective, relying on counsel's testimony that her "usual practice" would have been to discuss with her client the elements of the offense by "printing out the relevant statute(s) and/or jury instructions for the charged crimes." Based on counsel's testimony regarding her "usual practice," the court further concluded that counsel likely explained to Miller that he would be waiving his right to appeal the admissibility of the statements.

On direct appeal, Miller, through counsel, renewed all of the grounds raised in his post-conviction motion. In particular, he argued that he was entitled to withdraw his guilty plea because: (1) it was not knowingly, voluntarily and intelligently given because he did not understand the elements of the offense at the time of his plea; and (2) his trial counsel was ineffective for failing to make clear that he was waiving his right to challenge admissibility of statements by pleading guilty before the trial court ruled on his motion to suppress. (*See* Petitioner's Appeal Br., dkt. #14-2.) He also raised challenges to the circuit court's sentencing decision.

On August 14, 2012, the Wisconsin Court of Appeals rejected all of Miller's arguments and affirmed the conviction in an unpublished opinion. *See State v. Miller*, 2012 WI App 106, 344 Wis. 2d 297, 821 N.W.2d 412. Miller did not file a petition for review with the Wisconsin Supreme Court.

On December 26, 2012, Miller filed a *pro se* motion for post-conviction relief pursuant to § 974.06, asserting the following grounds for relief:

> (1) no evidence exists, and none was introduced to support a conviction for the offense charged; (2) the failure of the court to establish a factual basis, on the record, thereby failing to meet the constitutional standard required; (3) an element was missing from the plea questionnaire and charging documents; (4) no waiver was obtained of my right to appeal, thus violating the Constitution; (5) the violation of my 6th Amendment right to a jury trial on the missing element; (6) the court was without jurisdiction to impose sentence because the complaint was void and filing of the complaint without sufficient evidence to support a conviction violates due process; (7) the infringement of my right against self-incrimination under the United States and Wisconsin Constitutions; (8) the search warrant issued by a court without jurisdiction to do so; and (9) the abridgment of rights guaranteed by the constitutions and laws of this state and the United States, including a right that was not recognized as existing at the time of the original action.

In an order entered May 14, 2013, the circuit court denied Miller's motion, rejecting his challenge to the factual basis for his guilty pleas on the merits. (*See* Dkt. #14-9 at 14.) The court stated that it "need not address Mr. Miller's precise argument [that the plea and Complaint lacked sufficient evidence] because he did in fact stipulate to use both the Complaint and preliminary hearing transcript to provide the factual basis for his plea." (*See* dkt. #14-9 at 15.) The court also found sufficient evidence within the Complaint and the record of the plea hearing to sustain a conviction.

Additionally, the court found that Miller had waived his right to challenge the validity of the search warrant by pleading guilty. Applying settled Wisconsin law, the court noted that a valid guilty plea waives all non-jurisdictional defects and defenses, including alleged violations of constitutional rights before the plea. *See State v. Riekkoff*,

112 Wis. 2d 119, 123, 332 N.W.2d 744 (1983) (citing *Hawkins v. State*, 26 Wis. 2d 443, 448, 132 N.W.2d 545 (1965)).

Finally, the court found that Miller's remaining claims, including a challenge to the search-warrant, were procedurally barred under *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 181-82, 517 N.W.2d 157 (1994).[4] The court explained that, "a defendant is barred from pursuing claims in a subsequent appeal that could have been raised in a prior post-conviction motion or direct appeal unless the defendant provides 'sufficient reason' for failing to do so." In particular, the court noted that the Wisconsin Court of Appeals also addressed the following issues on direct appeal: "(1) plea withdrawal; (2) plea colloquy; (3) ineffective assistance of counsel; and (4) sentencing discretion." The court further found that Miller had not shown a "sufficient reason" for failing to raise the 9 issues presented in his § 974.06 motion during his direct appeal. (*See* dkt. #14-9 at 17.)

After the circuit court denied relief, Miller filed a motion for reconsideration, asserting that (1) there was no evidence to support his conviction; (2) the state failed to meet its burden to establish every element of the offense; and (3) there was no factual basis for his guilty pleas. On October 7, 2013, the circuit court denied Miller's motion for reconsideration. (*See* dkt. #14-9 at 130.) The court concluded that the motion presented no new arguments but, rather had "merely reformulate[d] arguments that he raised during this court's initial consideration of his original § 974.06 motion."

---

[4] In *Escalona-Naranjo*, the Wisconsin Supreme Court held that "due process for a convicted defendant permits him or her a single appeal of that conviction and a single opportunity to raise claims of error." *State ex rel. Macemon v. Christie*, 216 Wis. 2d 337, 343, 576 N.W.2d 84 (Ct. App. 1998). Thus, claims that could have been raised on direct appeal or by prior motion are barred from being raised in a post-conviction motion absent a sufficient reason for not raising the

7

On September 3, 2013, Miller filed a notice of appeal from the order denying his motion for post-conviction relief under § 974.06. The Wisconsin Court of Appeals determined that it lacked jurisdiction to review the order denying Miller's § 974.06 motion because he failed to timely file his notice of appeal in compliance with Wis. Stat. Rule 809.10(1)(e). *See State v. Miller*, 2014 WI App 83, ¶ 6, 355 Wis. 2d 579, 851 N.W.2d 472 (unpublished), dkt. #14-12. Accordingly, jurisdiction was "limited to reviewing the order denying reconsideration, and only to the extent that Miller's reconsideration motion raised issues not addressed in the order from which reconsideration was sought." *Id*. (citing *Silverton Enters., Inc. v. General Cas. Co.*, 143 Wis. 2d 661, 665, 422 N.W.2d 154 (Ct. App. 1988) (appeal cannot be taken from order denying reconsideration motion that presents same issues as those determined in order sought to be reconsidered)).

Noting that Miller's motion for reconsideration "merely repackaged some of the same arguments" determined in the order sought to be reconsidered, the court of appeals rejected his appeal for lack of jurisdiction. *See id*., 2014 WI App 83, ¶ 7 (citing *Silverton Enters.*, 143 Wis. 2d at 665). Observing further that any "new" claims raised by Miller were procedurally barred under *Escalona-Naranjo*, the court of appeals declined to consider the merits of his claims and affirmed the underlying conviction on June 10, 2014. *See id*. at ¶ 8. The Wisconsin Supreme Court summarily denied his petition for review on November 13, 2014.

---

claims earlier. *See State v. Lo*, 2003 WI 107, ¶ 44, 264 Wis. 2d 1, 665 N.W.2d 756.

OPINION

In his pending habeas corpus petition, Miller contends that he is entitled to relief pursuant to 28 U.S.C. § 2254 for the following reason: (1) the state had no evidence to support his conviction and, in particular, never found any photographs in Miller's possession that qualified as "child pornography"; (2) the plea hearing failed to establish a sufficient factual basis to support his guilty plea; and (3) the criminal complaint was defective for failing to allege all the elements of the offense. On February 25, 2015, this court reviewed the petition and determined that Miller's claims were likely barred by the doctrine of procedural default. The court nevertheless gave Miller an opportunity to supplement his petition explaining why his claims were not barred. (Dkt. #5.) After receiving his supplements (dkt. ## 4, 9), the court concluded that Miller had made at least colorable arguments regarding procedural default. Accordingly, the court ordered a response from the state and the case proceeded with briefing. Miller has now filed three briefs in support of his petition, to which the state has responded by arguing that all three of Miller's claims are barred by the doctrine of procedural default. The state did not address the merits of Miller's claims.

I. **Procedural Default.**

Federal courts may not review a habeas petition unless the prisoner has fairly presented his claims "throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings." *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014); 28 U.S.C. § 2254(b)(1). This requirement

has two components: (1) the petitioner's claims must be exhausted, meaning that there is no remaining state court with jurisdiction; and (2) the exhaustion must not be attributable to the petitioner's failure to comply with the state court system's procedural rules. *Johnson v. Foster*, 786 F.3d 501, 504 (7th Cir. 2015); *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004).

When the petitioner has already pursued his state court remedies but failed to properly present his claims to the state courts along the way, his claims are barred by the doctrine of procedural default. *Perruquet*, 390 F.3d at 514. The procedural default doctrine precludes a federal court from reaching the merits of a habeas claim if the petitioner either: (1) failed to present his claim to the state courts, and it is clear that those courts would now hold the claim procedurally barred; or (2) presented his claim to the state courts but the state court dismissed the claim on a state procedural ground independent of the federal question and adequate to support the judgment. *Perruquet*, 390 F.3d at 514; *Moore v. Bryant*, 295 F.3d 771, 774 (7th Cir. 2002); *Chambers v. McCaughtry*, 264 F.3d 732, 737-38 (7th Cir. 2001).

Here, Miller's claims are procedurally defaulted for at least two reasons. As an initial matter, any claim he raised on direct appeal is procedurally defaulted because he failed to petition the Wisconsin Supreme Court for review within 30 days of the court of appeals' decision dismissing his direct appeal, and it is now too late to do so. *See* Wis. Stat. §§808.10(1); 809.62. Specifically, on direct appeal to the Wisconsin Court of Appeals, Miller's primary claim was that his plea was involuntary, arguing that he did not understand that elements of the offense to which he was pleading. In support of this

claim, Miller pointed to the lack of any description of "sexually explicit conduct" in the criminal complaint, as well as his attorney's failure to review the relevant jury instructions with him. This same argument encompasses Claim 3 of Miller's federal habeas petition -- namely, that the criminal complaint was defective for failing to allege all the elements of the offense.

In other words, Miller made the same argument in the court of appeals on direct appeal that he is attempting to make to this court. Because Miller failed to petition the Wisconsin Supreme Court for review of the court of appeals' decision rejecting the claim, however, Miller procedurally defaulted on the claim and cannot raise it in this habeas case. *See Boerckel*, 526 U.S. at 848 (a petitioner who fails to present his claims in a petition for discretionary review to a state court of last resort has not properly presented or exhausted his claims, and those claims are procedurally defaulted); *Jenkins v. Gramley*, 8 F.3d 505, 507 (7th Cir. 1993).

Claims 1 and 2 of Miller's federal habeas petition are slightly different than the claims raised during his direct state appeal, but the outcome is still the same. These claims assert that: (1) the state had no evidence to support the conviction; and (2) the plea hearing failed to establish a sufficient factual basis to support his guilty plea. Both of these claims are essentially arguments about sufficiency of the evidence itself, whereas the arguments in his direct appeal concerned whether he understood the elements of the offense to which he was pleading. Nonetheless, Miller now attempts to argue that the argument made in his direct appeal encompassed the sufficiency of the evidence arguments because his brief on appeal mentioned the lack of evidence of child

11

pornography on his personal computer.  (*See* Petitioner's Br., dkt. #4, at 2.)  Obviously, given this mere "mention," there is a strong argument that Miller failed to raise his sufficiency of the evidence arguments fairly on direct appeal.  Even if the court accepted this argument, however, it would not help Miller, since his habeas claims would again be barred by procedural default because he failed to petition the Wisconsin Supreme Court for review of the court of appeals' decision.

Of course, Miller's habeas claims are procedurally defaulted for additional reasons. For example, assuming that he first raised his sufficiency of the evidence challenge in his post-conviction motion brought under § 974.06, those claims would still be procedurally defaulted because:  (1) Miller failed to file a timely notice of appeal from the order denying his § 974.06 motion; and (2) the Wisconsin Court of Appeals concluded that Miller had defaulted under the rule in *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 181-82, 517 N.W.2d 157 (1994), by failing to raise his § 974.06 claims fairly in his earlier motion for post-conviction relief or on direct appeal.  Miller's failure to file a timely appeal means that he failed to exhaust his claims in state court, and it is once again too late to do so.  Finally, the Seventh Circuit has recognized that the holding in *Escalona-Naranjo* is an independent and adequate state procedural rule sufficient to bar federal habeas corpus review.  *See Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013); *Perry v. McCaughtry*, 308 F.3d 682, 692 (7th Cir. 2002).  Thus, Miller already procedurally defaulted his claims in state court and this procedural default bars federal review unless he establishes that an exception applies.

## II.   Exceptions to Procedural Default.

If a petitioner has procedurally defaulted a claim, a federal court might yet reach the merits of that claim *if* the petitioner demonstrates either that:  (1) he has cause for the default and actual prejudice from failing to raise the claim as required; or (2) enforcing the default would lead to a "fundamental miscarriage of justice."  *Steward v. Gilmore*, 80 F.3d 1205, 1211-12 (7th Cir. 1996) (quoting *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).  Petitioner Miller, however, fits under neither prong.

A petitioner can demonstrate cause for his default by pointing to some objective factor external to the defense that blocked his ability to comply with the procedural rule.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To show actual prejudice, he must present evidence that the errors at trial "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).  Here, Miller argues that his procedural default, which stemmed from his failure to file a petition for review with the Wisconsin Supreme Court, should be excused under the "cause" and "prejudice" exception because:  (1) he was unrepresented at the time the notice of appeal was due, and he had to spend time determining whether he could afford new counsel; and (2) he did not receive the file from his attorney in time to file a notice of appeal.  Unfortunately for Miller, these arguments are not sufficient to show cause.

Whether or not it should be, it is Seventh Circuit (indeed, every circuit's) law that a petitioner's *pro se* status and limited understanding of the legal system are *not* sufficient

13

to establish cause for procedural default. *See Harris v. McAdory*, 334 F.3d 665, 668-69 (7th Cir. 2003). With respect to not receiving information from his attorney, Miller still provides *no* specific allegations to suggest that any delay by the attorney made it impossible for him to file a petition for review on his own. On the contrary, Miller had *30* days from the date of the court of appeals' decision to file his petition for review. While Miller now alleges that he received notice of the court of appeals' decision from his attorney one week after it was issued, meaning that he still had three weeks to draft a petition for review, he identifies no particular documents withheld from him that he needed to prepare a timely petition for review. Nor does he state that he demanded specific documents from the court or his attorney that were denied to him. Without such specific allegations, Miller has not shown cause for his procedural default stemming from his failure to file a petition for review with the Wisconsin Supreme Court.

Miller also has not shown good cause for his procedural default with respect to those claims raised in his § 974.06 motion. While Miller argues that he failed to file a timely appeal of the circuit court's denial of the motion because he misunderstood the statutes relating to appeal, as discussed above, lack of legal knowledge is not sufficient cause to excuse procedural default. *See Harris*, 334 F.3d at 668-69. With respect to those claims found to be barred under *Escalona-Naranjo*, Miller's only argument is that he *did* in fact raise *all* of the claims here in his § 947.06 motion on direct appeal. Not only does this argument not help him, given his failure to file a petition for review with the Wisconsin Supreme Court, but it is not persuasive.

14

To "fairly present" a claim in state court, a petitioner must present "both the operative facts and controlling law" relevant to his claim, as well as an analysis of the "constitutional nature of the claim." *Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006). Nowhere in Miller's direct appeal briefing did he develop arguments regarding the sufficiency of the evidence, let alone an argument that his constitutional rights had been violated by the state's failure to produce sufficient evidence. Instead, Miller's direct appeal focused on arguments regarding the voluntariness of his plea, the criminal complaint and the effectiveness of his counsel. Thus, Miller did not raise his sufficiency of the evidence arguments on direct appeal.

Finally, Miller has not shown that the "fundamental miscarriage of justice" exception applies, which requires a showing that "a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." *Dretke v. Haley*, 541 U.S. 386, 393 (2004) (quoting *Carrier*, 477 U.S. at 496); *accord Schlup v. Delo*, 513 U.S. 298, 327 (1995). More specifically, "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Thomas v. Williams*, 822 F.3d 378, 386-87 (7th Cir. 2016) (quoting *Schlup v. Delo*, 513 U.S. 298, 319-322 (1995)).

Here, Miller points to no *new* evidence suggesting his innocence. Instead, he simply insists that the state *lacked* any evidence to convict him. This is simply not true. The original complaint in this case identified evidence relevant to the charges against Miller, including evidence that Miller had exchanged pornographic photographs of

15

children with the subject of an ICE investigation. But even if it were true, an argument regarding the sufficiency of the evidence is not the same as presenting *new evidence* that would prove his innocence. *See Schlup*, 513 U.S. at 865 (examples of "new evidence" would be "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" that was not available or presented before). Miller has pointed to nothing that would qualify as "new evidence" under the relevant standard. Accordingly, the "fundamental miscarriage of justice" exception does not apply either.

III. **Certificate of Appealability.**

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they

"would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Although the rule allows a court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case. For the reasons already stated, the court concludes that petitioner's claims are barred by procedural default. Because reasonable jurists would not otherwise debate whether a different result was required, no certificate of appealability will issue.

ORDER

IT IS ORDERED that petitioner Anthony Todd Miller's petition for a writ of habeas corpus under 28 U.S.C. § 2254 is DENIED, and this matter is DISMISSED. A certificate of appealability is also DENIED. If petitioner wishes, he may seek a certificate from the court of appeals under Fed. R. App. P. 22.

Entered this 3rd day of May, 2017.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge